**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

:
CANOPIUS US INSURANCE, INC.,       :
:
             Plaintiff,    :     Civil Action No. 17-4616 (FLW) (DEA)
:
      v.            :
:         **OPINION**
GRAHAM TRUCKING, LLC; PATRICK   :
GRAHAM; JOHN MONTERO; NEXUS   :
MANAGEMENT, LLC; MERIT SERVICE  :
SOLUTIONS; NEW JERSEY TRANSIT;  :
NEXUS PARKING SYSTEMS; *and*    :
NEXUS PROPERTIES,         :
:
           Defendants.  :
_____ :

**WOLFSON, United States District Judge**:

      Plaintiff Canopius US Insurance, Inc. ("Plaintiff" or "Canopius") brings this action seeking a declaratory judgment that it has no duty to defend or indemnify Graham Trucking, LLC ("Graham Trucking") and Patrick Graham (collectively with Graham Trucking, the "Graham Defendants")[1] in an underlying personal injury lawsuit that is currently pending in the Superior Court of New Jersey, Law Division, Mercer County, captioned *John Montero v. Nexus Management, et al.*, No. MER-L-95-15 (the "*Montero* Action"). Presently before the Court is Plaintiff's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Plaintiff's Motion is granted, insofar as it seeks a declaration that: (1) Plaintiff has no duty to defend or indemnify the Graham Defendants in connection with the

_____

[1] In its Complaint, Plaintiff also names as nominal defendants John Montero, Nexus Management, LLC, Merit Service Solutions, the New Jersey Transit, Nexus Parking Systems, and Nexus Properties (collectively, the "Nominal Defendants.").

*Montero* Action; and (2) Plaintiff is entitled to reimbursement for its fees and costs expended in

defending the Graham Defendants in that action.

I.    **BACKGROUND**[2]

On December 10, 2013, John Montero allegedly slipped and fell on a patch of black ice

in the parking lot (the "Parking Lot") of the Hamilton Train Station in Hamilton, New Jersey,

sustaining personal injuries.  Plaintiff's Statement of Material Facts ("Pl.'s Statement"), ¶¶ 3-4;

Defendants' Response to Plaintiff's Statement of Material Facts ("Defs.' Resp."), ¶¶ 3-4.  On

January 1, 2015, Montero filed the *Montero* Action in state court, alleging that his injuries were

caused by the negligence of Nexus Management, LLC, Merit Service Solutions, the New Jersey

Transit, Nexus Parking Systems, Nexus Properties, and various fictitiously named individuals

and corporations, in their ownership, supervision, operation, control, management, inspection,

possession, maintenance, and construction of the Parking Lot.  Pl.'s Statement at ¶ 1; Defs.'

Resp. at ¶ 1.  Montero filed a second amended complaint on August 22, 2016, adding Graham

Trucking, LLC and Patrick Graham as defendants.  Pl.'s Statement at ¶ 2; Defs.' Resp. at ¶ 2.

Graham Trucking was the subcontractor responsible for snow removal at the Hamilton

Train Station on the date of Plaintiff's fall.  Pl.'s Statement at ¶ 8; Defs.' Resp. at ¶ 8.  While the

parties agree that Graham Trucking did in fact perform snow removal services at the Hamilton

Train Station on December 10, 2013, Pl.'s Statement at ¶ 9; Defs.' Resp. at ¶ 9, they dispute

whether Patrick Graham was personally involved in snow removal on that date.  Pl.'s Statement

at ¶ 9; Defs.' Resp. at ¶ 9.  Specifically, although Plaintiff avers that Patrick Graham performed

---

[2] The following facts are undisputed, except where noted, and are viewed in the light most
favorable to the Graham Defendants, the non-moving parties on this Motion for Summary
Judgment.  *See Jewsevskyj v. Fin. Recovery Servs., Inc.*, 704 F. App'x 145, 147 (3d Cir. 2017)
(observing that, in reviewing a motion for summary judgment, courts must view facts and make
"all reasonable inferences in the non-movant's favor.").

snow removal services at the Hamilton Train Station on December 10, 2013, Pl.'s Statement at ¶ 9, the Graham Defendants contend that that snow removal was performed by Graham Trucking without the involvement of Patrick Graham. *See* Defs.' Resp. ¶ 9; Certification of Patrick Graham ("Graham Cert."), ¶ 7.

At the time of the incident, Graham Trucking was covered under a policy of commercial general liability insurance (the "Policy") issued by Canopius, bearing the policy number OUS 009050543, with a policy period of August 1, 2013 through August 1, 2014. Pl.'s Statement at ¶¶ 10-11; Defs.' Resp. at ¶¶ 10-11; *see* Policy, Affidavit of Juliana O'Connell ("O'Connell Aff."), Ex. 2, ECF No. 10-10. Patrick Graham qualifies as an insured under the Policy. Pl.'s Statement at ¶ 11; Defs.' Resp. at ¶ 11. The Policy's Commercial General Liability Coverage Declarations (the "Declarations Sheet") provide as follows:

**Business Description**: *Driveway, Parking Area or Sidewalk Paving or Repaving*

| **Class Code** | **Class Description** |
|---|---|
| 92215 | *Driveway, Parking Area or Sidewalk Paving or Repaving* |
| 49950 | *Additional Interests* |

Policy, Commercial General Liability Coverage Part Extension of Supplemental Declarations, Form CGDSO1-EX (10-01), O'Connell Aff., Ex. 2, Pl.'s Statement at ¶ 12; Defs.' Resp. at ¶ 12.

Relevant to the instant dispute, the Policy also contains a classification limitation (the "Exclusion"), which provides as follows:

***THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. ALL SECTIONS OF THIS SEVEN (7) PAGE ART-GL-01 APPLY TO, AND MODIFY, YOUR POLICY.***
***ADDITIONAL EXCLUSIONS***

*This endorsement modifies insurance provided under the following:*

***COMMERCIAL GENERAL LIABILITY COVERAGE PART***

* * *

***EXCLUSION – CLASSIFICATION LIMITATION***

> *The following exclusion is added to COVERAGES A, B, and C (Section I):*

> *This insurance does not apply to "bodily injury", "Property damage", "advertising injury", "personal injury" or medical payments for operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.*

Policy, ART-GL-01 (08/11), page 4 of 6, O'Connell Aff., Ex. 2; Pl.'s Statement at ¶ 13; Defs.' Resp. at ¶ 13. It is undisputed that snow and ice removal operations are neither classified nor shown on the Declarations Sheet. Pl.'s Statement at ¶ 14; Defs.' Resp. at ¶ 14.

After receiving notification of Montero's claim against the Graham Defendants, Canopius initially denied coverage for the claim, citing the Exclusion in the Policy. Pl.'s Statement at ¶ 17; Defs.' Resp. at ¶ 17. However, on October 5, 2016, Canopius offered to defend the Graham Defendants in the *Montero* Action, subject to a denial of indemnity coverage pursuant to the Exclusion. Pl.'s Statement at ¶ 18; Defs.' Resp. at ¶ 18. In its October 5, 2016 letter, Canopius also reserved its right to seek reimbursement of fees and costs incurred in the defense of the Graham Defendants in the *Montero* Action. Pl.'s Statement at ¶ 19; Defs.' Resp. at ¶ 19. Patrick Graham, on behalf of himself and Graham Trucking, verbally rejected Canopius' initial offer of defense, stating that the Graham Defendants had a separate policy of insurance issued by Preferred Contractors Insurance Company ("PCIC"), which policy afforded snow and ice removal coverage. Pl.'s Statement at ¶ 20; Defs.' Resp. at ¶ 20.

On October 25, 2016, Canopius sent a letter to PCIC, requesting that PCIC assume the defense of the Graham Defendants in the *Montero* Action. Pl.'s Statement at ¶ 21; Defs.' Resp. at ¶ 21; Declaration of Rachelle Shocklee ("Shocklee Decl."), ¶ 19. However, after PCIC failed

4

to timely assume the defense of the Graham Defendants, Pl.'s Statement at ¶ 22; Defs.' Resp. at ¶ 22, Patrick Graham requested that Canopius reinstate its October 5, 2016 offer of defense. Pl.'s Statement at ¶ 23; Defs.' Resp. at ¶ 23.

On November 8, 2016, Canopius reinstated its offer to defend the Graham Defendants in the *Montero* Action, subject to the same denial of coverage and reservation of rights set forth in its October 5, 2016 letter – *i.e.*, subject to a denial of indemnity coverage pursuant to the Exclusion. Pl.'s Statement at ¶¶ 24-25; Defs.' Resp. at ¶¶ 24-25; Shocklee Decl. at ¶¶ 22-23. The offer to defend was also conditioned on an agreement that, in the event PCIC assumed coverage, the Graham Defendants would permit Canopius to withdraw from any further coverage with respect to the *Montero* Action. Pl.'s Statement at ¶ 26; Defs.' Resp. at ¶ 26. Finally, Canopius reserved its right to seek reimbursement from the Graham Defendants for the fees and costs incurred in the defense of any non-covered causes of action and damages in the *Montero* Action. Pl.'s Statement at ¶ 27; Defs.' Resp. at ¶ 27; Shocklee Decl. at ¶ 23. The Graham Defendants accepted Canopius' November 8, 2016 offer of defense. Pl.'s Statement at ¶ 28; Defs.' Resp. at ¶ 28.

Ultimately, PCIC did not agree to provide defense or indemnity coverage to the Graham Defendants in connection with the *Montero* Action. Pl.'s Statement at ¶ 29; Defs.' Resp. at ¶ 29. Thereafter, Canopius requested that the Graham Defendants voluntarily assume their own defense. Pl.'s Statement at ¶ 30; Defs.' Resp. at ¶ 30. As of the time that the instant Motion was filed, the Graham Defendants had not assumed their own defense. Pl.'s Statement at ¶ 31; Defs.' Resp. at ¶ 31. Significantly, the parties agree that the only operations of the Graham Defendants at issue in the *Montero* Action are snow and ice removal, not their driveway, parking area, or sidewalk paving or repaving operations. Pl.'s Statement at ¶ 32; Defs.' Resp. at ¶ 32.

On June 23, 2017, Canopius filed the instant declaratory judgment action against the Graham Defendants. The Complaint asserts a single count, seeking a declaration, pursuant to 28 U.S.C. § 2201, that, as a result of the Exclusion in the Policy: (1) Canopius has no obligation to provide defense or indemnity coverage to the Graham Defendants in connection with the *Montero* Action; (2) the Graham Defendants owe monetary damages in an amount to be determined for the fees and costs that Canopius has incurred in connection with its defense of the Graham Defendants in the *Montero* Action; and (3) Canopius has no obligation to provide payment of any judgment that any nominal defendant may obtain against the Graham Defendants in the *Montero* Action. Plaintiff filed the instant Motion for Summary Judgment on September 20, 2017. ECF No. 10. The Motion has been fully briefed. ECF Nos. 20, 22.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322. Once the moving party has satisfied this initial burden, the opposing party must identify "specific facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366; *see Gleason v. Norwest Mortg. Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Not every issue of fact is sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Additionally, the nonmoving party cannot rest upon mere allegations; he or she must present actual evidence that creates a genuine issue of material fact. *See* FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 249. In conducting a review of the facts, the nonmoving party is entitled to all reasonable inferences and the record is construed in the light most favorable to that party. *See Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). Accordingly, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a reasonable jury could return a verdict for the nonmoving party. *See Brooks v. Kyler*, 204 F.3d 102, 105, n.5 (3d Cir. 2000).

## III.   <u>DISCUSSION</u>

In its Motion for Summary Judgment, Canopius argues that it has no duty to defend or indemnify the Graham Defendants in the *Montero* Action, because the claims at issue in that

action arise out of the Graham Defendants' snow and ice removal operations, and the plain language of the Exclusion limits Canopius' coverage obligation to claims arising only out of the Graham Defendants' driveway, parking area, or sidewalk paving or repaving operations. In opposition, the Graham Defendants argue the Policy is ambiguous as to whether it affords coverage for claims related to their snow and ice removal operations. Alternatively, the Graham Defendants maintain that summary judgment is premature, because discovery has yet to take place in this case.

At the outset, the instant case requires an evaluation of the principles governing an insurance carrier's duties to defend and indemnify its insureds. An insurance carrier "is contractually obliged to provide the insured with a defense against all actions covered by the insurance policy." *Abouzaid v. Mansard Gardens Assocs., LLC*, 207 N.J. 67, 79 (2011). In determining whether a duty to defend exists, courts compare "the allegations set forth in the complainant's pleading and the language of the insurance policy." *Flomerfelt v. Cardiello*, 202 N.J. 432, 444 (2010). If the complaint raises allegations that fall within a risk covered by the insurance contract, then "the duty to defend arises, irrespective of the claim's actual merit." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173 (1992). Nonetheless, in determining whether a duty to defend has been triggered, a court's analysis "is not necessarily limited to the facts asserted in the complaint," *Abouzaid*, 207 N.J. at 81, and may include "extrinsic facts, outside of the complaint, which are later revealed in discovery . . . ." *S.T. Hudson Engineers, Inc. v. Pennsylvania Nat. Mut. Cas. Co.*, 388 N.J. Super. 592, 606 (App. Div. 2006).

With those principles in mind, the Court notes that the complaint at issue in the *Montero* Action broadly alleges that the Parking Lot was "negligently owned supervised, operated, controlled, managed, inspected, possessed, maintained, repaired, [or] constructed" by all defendants in that matter, including the Graham Defendants, which negligence resulted in Montero's injuries. Second Am. Compl. ¶ 1, Shocklee Decl., Ex. 5. Here, however, the Graham Defendants do not dispute that the "only activities of [the Graham Defendants] at issue in the [*Montero* Action] are [their] snow and ice removal operations, not [their] Driveway, Parking Area, or Sidewalk Paving or Repaving operations." Pl.'s Statement at ¶ 32; Defs.' Resp. at ¶ 32. Although the underlying complaint does not expressly confine the allegations against the Graham Defendants to snow or ice removal, in determining Plaintiff's duty to defend, it is appropriate to consider these stipulated facts. *See Alexander v. Nat'l Fire Ins. of Hartford*, 454 F.3d 214, 220 (3d Cir. 2006) (in determining whether a duty to defend is triggered, it "is proper to consider evidence not set forth in the underlying litigation . . . ."). Indeed, the Graham Defendants do not argue that the duty to defend in this case is triggered by claims relating to anything other than their snow and ice removal operations. Accordingly, despite the broad nature of the underlying complaint, because the parties agree that claims in the state action relate only to the Graham Defendants' snow and ice removal operations, the Court's analysis is confined to whether the Policy requires Plaintiff to defend or indemnify the Graham Defendants as to claims arising out of their snow and ice removal services.

## A.      Interpretation of an Insurance Contract Under New Jersey Law

Because this case requires the Court to interpret the Policy, I begin with a statement of the basic principles governing the interpretation of insurance contracts under New Jersey law. Under New Jersey law, the determination of "the proper coverage of an insurance contract is a

question of law." *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt*, 202 N.J. at 441. However, because insurance policies are contracts of adhesion, they "are subject to special rules of interpretation," *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 537 (1990), and "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees*, 128 N.J. at 175; *see Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594 (2001) ("We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies."). In a dispute over the interpretation of an insurance contract, the "burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996). However, where, as here, "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim." *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super. 521, 530 (App. Div. 2002).

The Court's function in construing policies of insurance, as with any other contract, "is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (App. Div. 1994). In most cases, the best indication of the parties' reasonable expectations lies in the language of the insurance policy itself, *Moessner*, 121 F.3d at 903, and thus, ordinarily, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. In that regard, "[w]here the express

language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" *Rosario*, 351 N.J. Super. at 530 (quoting *Royal Ins.*, 271 N.J. Super. at 416); *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry."). This governing principle precludes courts from writing "'for the insured a better policy of insurance than the one purchased.'" *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999) (citation omitted).

However, where a genuine ambiguity exists, "a court may look to extrinsic evidence as an aid to interpretation." *Chubb*, 195 N.J. at 238. A genuine ambiguity exists "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Lee v. Gen. Acc. Ins. Co.*, 337 N.J. Super. 509, 513 (App. Div. 2001); *see Zacarias*, 168 N.J. at 601 ("[I]n enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding . . . if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.") (internal citations omitted). Nonetheless, "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Powell v. Alemaz, Inc.*, 335 N.J. Super. 33, 44 (App. Div. 2000). Where a genuine ambiguity exists, "courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." *Zacarias*, 168 N.J. at 595; *see Gibson*, 158 N.J. at 671 ("[I]nsurance policies must be construed to comport with the reasonable expectations of the insured.").

Additionally, in the context of an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not

contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). Because the burden is on the insurer to bring the case within an exclusion, *Chunmuang*, 151 N.J. at 95, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 202 N.J. at 442 (internal citation omitted). Nonetheless, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi*, 121 N.J. at 537). In that regard, courts cannot "disregard the 'clear import and intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998) (citation omitted), and "[f]ar-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan-African Chamber of Commerce & Indus., Inc.*, No. A-1237-14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co.*, 309 N.J. Super. 97, 105 (App. Div. 1998)).

## B. Plaintiff has no Duty to Defend or Indemnify the Graham Defendants

Here, Plaintiff argues that the Policy clearly and unambiguously provides that Plaintiff is not obligated to defend or indemnify the Graham Defendants for claims arising out of their snow and ice removal operations, because those operations are not listed in the Declarations Sheet. The Graham Defendants counter that the Policy is ambiguous with respect to coverage for snow and ice removal operations, because the Policy does not expressly list snow removal as a non-covered operation and the Exclusion is presented on a different page from the Declarations Sheet. Alternatively, the Graham Defendants argue that Patrick Graham reasonably expected

12

that the Graham Defendants' snow and ice removal operations would be covered under the Policy.

Here, the Court finds that Plaintiff does not have a duty to defend the Graham Defendants in the *Montero* Action, because the plain language of the Exclusion renders the Policy inapplicable to personal injury claims arising out of snow or ice removal. To that end, the Exclusion provides that "*[t]his insurance does not apply to 'bodily injury', 'Property damage', 'advertising injury', 'personal injury' or medical payments for operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.*" Policy, ART-GL-01 (08/11) (emphasis in original). And, significantly, the only operations listed in Declarations Sheet are the Graham Defendants' "*Driveway, Parking Area or Sidewalk Paving or Repaving*" operations. Policy, Commercial General Liability Coverage Part Extension of Supplemental Declarations, Form CGDSO1-EX (10-01) (emphasis in original). In short, the Exclusion explicitly disclaims coverage for claims related to operations not listed on the Declarations Sheet, and the only operations listed in Declarations Sheet are the Graham Defendants' paving or repaving operations. The Court need not depart from the literal text of the Exclusion, because the language of the Exclusion is "direct and ordinary," set forth in large, italic font, and can "be understood without employing subtle or legalistic distinctions." *Zacarias*, 168 N.J. at 601. Thus, because snow and ice removal operations are not listed on the Declarations Sheet, the Court will enforce the Exclusion and find that Plaintiff has no duty to defend the Graham Defendants in the *Montero* Action.

Additionally, contrary to the Graham Defendants' argument, a genuine ambiguity is not created by the fact that the Policy does not contain a specific provision indicating that it does not cover claims arising out of snow and ice removal operations. As the Court has already observed,

the Exclusion clearly and unambiguously provides that Plaintiff's duty to defend is not triggered by claims arising out of operations not listed in the Declarations Sheet. Various courts have enforced similar exclusionary provisions, finding that an insurance carrier is not obligated to defend its insured for claims arising out of operations not listed in the policy's declarations.[3] *See*, *e.g.*, *Am. W. Home Ins. Co. v. Donnelly Distribution, Inc.*, 523 F. App'x 871, 874 (3d Cir. 2013) (enforcing a policy provision limiting coverage to operations necessary or incidental to the insured's premises); *Colony Nat. Ins. Co. v. Hing Wah Chinese Rest.*, 546 F. Supp. 2d 202, 207-09 (E.D. Pa. 2008) (finding that a classification limitation limiting coverage to operations listed in the policy's declarations was enforceable); *Atl. Cas. Ins. Co. v. C.A.L. Const. Corp.*, No. 06-4036, 2008 WL 2946060, at *5 (E.D.N.Y. July 30, 2008) (finding that an insurance carrier had no duty to defend its insured in connection with an underlying negligence action, where the policy included an exclusionary provision barring coverage for "any injuries or claims resulting from 'operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements,'" and the underlying action did not arise from an operation listed in the policy's declarations).

For example, in *Donnelly Distribution*, an insurance carrier brought a declaratory judgment action against its insured, a newspaper distribution firm, seeking a declaration that it had no duty to defend or indemnify the insured in connection with a state court action filed by an individual who slipped and fell on plastic ties distributed by the insured. 523 F. App'x at 872-73. The policy at issue restricted coverage "to bodily injuries 'arising out of . . . [t]he ownership, maintenance or use' of 1301–05 N. Howard Street, Philadelphia, Pennsylvania 19122 and

---

[3] The New Jersey Supreme Court has endorsed examining "how other courts have interpreted the same or similar language in standardized contracts to determine what the parties intended . . . ." *Chubb*, 195 N.J. at 238.

operations 'necessary or incidental' to those premises." *Id.* at 872. On appeal, the Third Circuit held that the carrier had no duty to defend the insured in the underlying matter, because the policy unambiguously limited coverage to operations that were necessary or incidental to the insured premises, not the entirety of [the insured's] business operations." *Id.* at 874. To that end, in rejecting the insured's argument that the disposal of plastic ties at a location other than the insured's premises was covered under the policy, the court noted that "[h]ad the parties intended to provide for business-wide coverage, they surely would have found a clear way to say so, rather than by including an oblique reference to one particular . . . distribution center." *Id.*

Similarly, in *Hing Wah*, an insurance carrier brought a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify an insured restaurant in an underlying action involving a car accident with one of the restaurant's delivery drivers. 546 F. Supp. 2d at 204. The policy at issue contained a classification limitation provision that is similar to the Exclusion in this case, providing that "[c]overage under this policy is specifically limited to those operations described in the declarations under 'Classification.' No other operations by the insured or by anyone for whose actions the insured is responsible are covered." *Id.* at 206. The classifications listed on the declarations page simply stated "restaurant." *Id.* at 207. The insurance carrier moved for summary judgment, arguing that because the declarations page of the policy did not include food delivery, it had no duty to defend the restaurant in the underlying matter. *Id.* In that connection, the insurance carrier maintained that although the policy was silent as to "food delivery, the restaurant classification section typically describes the operations the restaurant engages in, rather than operations the restaurant does not engage in," and thus, that no coverage existed for food delivery. *Id.* The court granted summary judgment in favor of the insurance carrier, finding that the omission of food delivery from the declarations page suggested

that "the parties did not contemplate that food delivery would be covered by the Policy." *Id*.  To

that end, the court found that the term "restaurant" was not ambiguous, and thus, that the plain

language of the classification limitation was enforceable.  *Id.* at 209.

Here, as in *Donnelly Distribution* and *Hing Wah*, the Court finds that the Exclusion, by

its plain terms, only contemplates coverage for claims arising out of the Graham Defendants'

driveway, parking area or sidewalk paving or repaving operations, as opposed to the entirety of

the Graham Defendants' business operations.  As the parties agree, the *Montero* Action only

implicates the Graham Defendants' snow and ice removal operations, which are unrelated to the

Graham Defendants' paving or repaving operations.  Had the parties intended to provide

"business-wide coverage" for the Graham Defendants, including coverage for their snow and ice

removal services, they could have included a broad reference to all operations of the Graham

Defendants in the Declarations Sheet, rather than a specific reference to their paving and

repaving operations. *See Donnelly Distribution*, 523 F. App'x at 874.  Additionally, that the

Declarations Sheet is silent as to snow and ice removal operations is of no moment; to find

otherwise would impose an undue burden on insurance carriers by requiring them to list every

non-covered operation within the confines of an insurance policy.  Accordingly, the Court finds

that the plain language of the Exclusion unambiguously provides that Canopius is not obligated

to defend the Graham Defendants for claims arising from their snow and ice removal services.

Nor does the fact that the Exclusion is contained on a separate page from the Declarations

Sheet render the Policy ambiguous.  The New Jersey Supreme Court rejected a similar argument

in *Zacarias*, 168 N.J. at 603.  In *Zacarias*, an insured submitted a claim to his boat insurance

carrier, seeking coverage under a policy of insurance for personal injuries that his wife sustained

in a boating accident.  *Id.* at 593-94.  After the carrier disclaimed coverage on the basis of an

intra-family exclusion contained in the policy, the insured filed a declaratory judgment action, seeking, *inter alia*, a declaration that the intra-family exclusion was void and that he was entitled to indemnification. *Id.* at 594. Both the trial court and the appellate court granted summary judgment in favor of the carrier, finding that the intra-family exclusion was enforceable. *Id.* On appeal, the insured argued that the intra-family exclusion was ambiguous, because it was listed on a separate page from the policy's declarations. *Id.* at 602-03.

The New Jersey Supreme Court rejected the insured's argument, holding that that intra-family exclusion was enforceable. *Id.* at 603. Specifically, in finding that the separation of the intra-family exclusion from the declarations sheet did not render the policy ambiguous, the Court explained:

> We do not . . . interpret *Lehrhoff* to require an insurer to include an intra-family exclusion on the policy's declarations sheet in all cases. . . . In this case, . . . we find no ambiguity, inconsistency, or contradiction between the declarations sheet and the body of plaintiff's policy. As noted, the declarations sheet alerts the insured that the coverages and limits of liability are subject to the provisions of the policy, one of which is the intra-family exclusion. Also as noted, the exclusion itself is written in direct and ordinary terms.
>
> * * *
>
> In sum, an insurance contract is not *per se* ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented. A rule of construction forcing insurers to avoid all cross-referencing in policies would require them to reprint the entire definition section on each page of the policy, or to define each term every time it is used. That proliferation of fine print would itself demand strenuous study and run the risk of making insurance policies more difficult for the average insured to understand.

*Id*. at 602-03.

Similarly, here, the Court finds no ambiguity or contradiction between the Declarations Sheet and the Exclusion, and thus, the fact that the Exclusion is not expressly listed within the Declarations Sheet does not render the Policy ambiguous. Significantly, the Exclusion is cross-

referenced in the Declarations Sheet,[4] alerting the insured that coverage is limited by that provision of the Policy. Additionally, the page of the Policy containing the Exclusion is contained in the form directly following the Declarations Sheet, a mere four pages from the Declarations Sheet. Under these circumstances, the Court cannot find that the Policy is ambiguous.

Finally, the Court is not persuaded that Patrick Graham reasonably expected the Policy to provide coverage for snow removal operations. In the first instance, as the Court has already explained, because the language of the Exclusion is clear and unambiguous, the Court need only consider the plain language of the Policy in resolving this coverage dispute, without resorting to the reasonable expectations of the insured. *Chubb*, 195 N.J. at 238. Moreover, even if the Court were to conclude that the Policy was ambiguous as to coverage for snow and ice removal services, there is nothing in the record to suggest that Patrick Graham – or Graham Trucking – reasonably expected that the Policy would cover snow and ice removal operations. To the contrary, Patrick Graham's assertions are belied by the fact that, in initially rejecting Plaintiff's verbal offer of defense, Patrick Graham stated that the Graham Defendants had a separate policy of insurance through PCIC that afforded snow and ice removal coverage. Pl.'s Statement at ¶ 20; Defs.' Resp. at ¶ 20. Additionally, Patrick Graham's contention is undermined by the absence of snow and ice removal services from the Declarations Sheet, "the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage

---

[4] Specifically, the Declarations Sheet provides:
        Form(s) and Endorsement(s) made a part of this policy at time of issue:
        . . . ART-GL-01 (08-11) . . . .
Policy, Commercial General Liability Coverage Part Extension of Supplemental Declarations, Form CGDSO1-EX (10-01).

and the insured's expectation of coverage. *Lehrhoff v. Aetna Cas. & Sur. Co.*, 271 N.J. Super. 340, 347 (App. Div. 1994). Furthermore, the Graham Defendants do not argue that the terms "Driveway, Parking Area or Sidewalk Paving or Repaving" operations are generally understood to encompass snow and ice removal services. Rather, in conceding that the only activities at issue in the *Montero* Action are their "snow and ice removal operations, *not* [their] Driveway, Parking Area or Sidewalk Paving or Repaving operations," Pl.'s Statement at ¶ 20; Defs.' Resp. at ¶ 20, the Graham Defendants explicitly distinguish snow and ice removal operations from the operations covered under the Policy. As such, there is no genuine issue of material fact regarding Patrick Graham's reasonable expectations. Accordingly, the Court's finding that the Policy unambiguously excludes coverage for the claims at issue in the *Montero* Action is not inconsistent with the reasonable expectations of Patrick Graham.

In sum, the Court finds that Plaintiff has no duty to defend the Graham Defendants in the *Montero* Action, because the Exclusion clearly and unambiguously limits coverage under the Policy to claims arising out of operations listed in the Declarations Sheet, and the only operations at issue in the *Montero* Action – the Graham Defendants' snow and ice removal operations – are not listed in the Declarations Sheet. And, because an insurance carrier's duty to defend is broader than its duty to indemnify, *Gen. Acc. Ins. Co. of Am. v. State, Dep't of Envtl. Prot.*, 143 N.J. 462, 465 (1996), it necessarily follows that because Plaintiff has no duty to defend the Graham Defendants in the *Montero* Action, Plaintiff also has no duty to indemnify the Graham Defendants for any judgment obtained in that action.[5] *See Ramara, Inc. v. Westfield Ins. Co.*,

---

[5] In its Motion for Summary Judgment, Plaintiff also seeks a declaration that it "has no obligation to provide payment of any judgment that the nominal defendants may obtain against the Graham Defendants in the [*Montero* Action]." Pl.'s Br. at 17. In light of this Court's finding that Plaintiff has no duty to defend or indemnify the Graham Defendants with respect to the *Montero* Action, the Court also finds that Plaintiff has no duty to pay any judgment that the

814 F.3d 660, 673 (3d Cir. 2016) ("Because an insurer's duty to defend its insured in a lawsuit is

broader than its duty to indemnify, it necessarily follows that it will not have a duty to indemnify

an insured for a judgment in an action for which it was not required to provide defense.");

*Columbus Farmers Mkt., LLC v. Farm Family Cas. Ins. Co.*, No. 05-2087, 2006 WL 3761987, at

*15 (D.N.J. Dec. 21, 2006) (observing that, under New Jersey law, when there is no duty to

defend, there can be no duty to indemnify). Accordingly, the Court finds that Plaintiff has no

obligation to defend or indemnify the Graham Defendants in connection with the *Montero*

Action.

### C. Summary Judgment is Not Premature

In their Opposition brief, the Graham Defendants also argue that summary judgment is

premature at this juncture, because discovery has not yet taken place, and the Nominal

Defendants filed answers as late as October 13, 2017. Contrary to the Graham Defendants'

argument, however, the Court has already found that summary judgment in favor of Plaintiff is

warranted, because no genuine dispute of fact exists in this case based upon the language of the

Policy, and Plaintiff is entitled to judgment as a matter of law on the issue of its duties to defend

and indemnify the Graham Defendants in connection with the *Montero* Action. Indeed, outside

of disputing whether Patrick Graham was individually involved in snow and ice removal on the

date of Montero's alleged injury – a fact irrelevant to the determination of Plaintiff's duty to

defend or indemnify the Graham Defendants – the Graham Defendants agree with every other

assertion listed in Plaintiff's Statement of Material Facts. Accordingly, because the Graham

Defendants have failed to meet their burden, as the nonmoving party, of presenting "specific

---

Nominal Defendants may obtain against the Graham Defendants in the *Montero* Action, insofar
as such a judgment arises out of the Graham Defendants' snow and ice removal services.

facts that show there is a genuine issue for trial," *Lawson v. Haupt*, 677 F. App'x 43, 44 (3d Cir. 2017), summary judgment in favor of Plaintiff is warranted.

Moreover, the Graham Defendants have failed to meet their burden of showing that additional discovery is required to properly oppose Plaintiff's Motion. "It is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (citation omitted). "A party that opposes summary judgment on the grounds of insufficient discovery has the ability to do so through [Federal Rule of Civil Procedure] 56(d)." *Malouf v. Turner*, 814 F. Supp. 2d 454, 459 (D.N.J. 2011). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).

In the Third Circuit, a motion for additional discovery under Rule 56(d) will ordinarily be granted if the moving party submits an affidavit including the following information: "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Pennsylvania Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)). The information sought through further discovery must include "specific facts" that will be revealed through discovery; "[v]ague or general statements of what a party hopes to gain through a delay for discovery under Rule 56(d) are insufficient." *Malouf*, 814 F. Supp. 2d at 460; *see also J. Josephson, Inc. v. Crum & Forster Ins. Co.*, 293 N.J. Super. 170, 204 (App. Div.

1996) ("When the incompleteness of discovery is raised as a defense to a motion for summary judgment, that party must establish that there is a likelihood that further discovery would supply the necessary information.").

In the case at bar, the Graham Defendants vague and general statement that Plaintiff's Motion for Summary Judgment should be denied as premature, because discovery has not yet taken place, is insufficient to meet the requirements of Rule 56(d). To that end, the Graham Defendants have failed to submit an affidavit articulating what particular information or facts they would seek through discovery, and how, if uncovered, that discovery would preclude summary judgment in this case. *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994). Indeed, because the Court's summary judgment ruling rests on the language of the Policy itself and the undisputed facts in this case, Plaintiff's claims can be adjudicated based on those documents and facts without the need for factual discovery. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir. 1987) ("Because the [plaintiffs'] antitrust claim was properly resolved as a matter of law on the basis of stipulated facts, factual discovery was unnecessary."). Accordingly, Plaintiff's Motion for Summary Judgment is not premature, and the Court grants summary judgment in favor of Plaintiff on the issues of its duty to defend and indemnify.

### D.     Reimbursement of Defense Fees and Costs

In its Motion for Summary Judgment, Plaintiff also seeks a declaration that it is entitled to reimbursement for the fees and costs it has expended in defending the Graham Defendants in the *Montero* Action. "The right of reimbursement exists in cases where an insurer honored its duty to defend but sought reimbursement from an insured for fees incurred in defending a non-covered claim 'because the insured would be unjustly enriched in benefiting by, without paying

for, the defense of a non-covered claim.'" *U.S. Specialty Ins. Co. v. Sussex Airport, Inc.*, No. 14-5494, 2016 WL 2624912, at *4 (D.N.J. May 9, 2016) (quoting *Hebela v. Healthcare Ins. Co.*, 370 N.J. Super. 260, 279 (App. Div. 2004)).  Having found that Plaintiff has no duty to defend the Graham Defendants in the *Montero* Action, the Court also finds that Plaintiff is entitled to reimbursement for the fees and costs incurred in defending the Graham Defendants in that case. Plaintiff shall file a supplemental certification, within thirty (30) days of the date of the Order accompanying this decision, setting forth its reasonable fees and costs incurred in defending the Graham Defendants.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted, as follows:  (1) Plaintiff has no obligation to defend or indemnify the Graham Defendants in connection with the *Montero* Action; and (2) Plaintiff is entitled to reimbursement for the fees and costs that it incurred in defending the Graham Defendants in the *Montero* Action.  Plaintiff shall file a supplemental certification, within thirty (30) days of the date of the Order accompanying this decision, detailing the fees and costs expended in defending the *Montero* Action.


Dated:  April 12, 2018                              /s/ Freda L. Wolfson
                                                    Hon. Freda L. Wolfson
                                                    United States District Judge